UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SAUNDRA LEE BROWN-KINGSTON, et al.,<br><br>Defendants. | No. 2:18-cv-02783-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this interpleader action, Plaintiff Great American Life Insurance Company ("Plaintiff"), deposited into the Court's registry death benefits from a life insurance policy subject to competing claims by Defendants Saundra Lee Brown-Kingston ("Brown-Kingston") and Christine Leora Bailey ("Bailey") (collectively "Defendants"). Compl., ECF No. 1, at 2. The insurance policy covered the life of Michael James MacFarland ("Decedent"), who at the time of death was Brown-Kingston's uncle and Bailey's ex-husband. Plaintiff has been discharged, and, presently before the Court are Defendants' Cross-Motions for Summary Judgment, which are fully briefed. ECF Nos. 43 ("Bailey's

///
///
///

In response, Plaintiff brought this action for interpleader pursuant to 28 U.S.C § 1335 asking this Court to resolve the conflicting claims. Plaintiff deposited the death benefits with the Clerk of the Court and was thereafter discharged from this action. Presently before the Court are the cross-motions for summary judgment as to the competing claims of Bailey and Brown-Kingston. Bailey contends that under the Agreement, Decedent assumed an ongoing obligation to maintain the Policy for her benefit. Brown-Kingston, on the other hand, argues that Decedent's obligations terminated when the divorce became final.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record . . . ; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must

demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, [] the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis original). As the Supreme Court explained: "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587 (citing First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

"It is well settled . . . that a husband and wife, in contemplation of separation and divorce, may contract between themselves to settle and adjust all their property rights which have arisen out of the marital relationship." 5 Richard A. Lord, Williston on

4

Contracts § 11:7 (4th ed.) (collecting cases); see id. ("[I]nterspousal agreements are generally governed by the same principles that apply to ordinary contracts . . . ."). Courts generally concur that valid separation agreements are contracts binding on the parties, subject to standard contractual restraints. See, e.g., Balogh v. Balogh, 332 P.3d 631, 641 (Haw. 2014) (citing Hawaiian law). Under Hawaiian law, "all valid and enforceable . . . divorce agreements pertaining to the property division issue . . . must be enforced." Epp v. Epp, 905 P.2d 54, 56-57 (Haw. Ct. App. 1995).

Although there appears to be no binding authority directly on point, the vast majority of authority supports Bailey's position that under the Divorce Agreement a contract existed between her and "[Decedent] wherein he agreed to keep the Policy in full force and effect with Ms. Bailey as the primary Beneficiary." Bailey's Motion, at 7. Brown-Kingston's contention that Decedent "was only required to keep Bailey listed as the beneficiary until the divorce was finalized" is unpersuasive. Brown-Kingston's Motion, at 2. First, Brown-Kingston's argument is belied by the fact that the Agreement was incorporated into the final divorce decree. There would be no reason to incorporate a term that dissolved once the divorce was finalized. Indeed, not only does the contract here lack any language to the effect that the life insurance provision would only last through the divorce, it expressly contemplates that the parties would have ongoing obligations. See Bailey's Mot., Ex. 1, ¶ 17 ("For so long as a party shall live, all of that party's agents and assigns shall be bound by this Agreement, and they are irrevocably so instructed."); id., ¶ 8 (using phrases such as "shall keep in full force and effect" and "shall continue to designate"). Second, months after the decree issued, Decedent changed the primary beneficiary to reflect Bailey's maiden name. This change is consistent with the understanding that Bailey was to remain the beneficiary throughout the Policy's term.

///

///

///

1    Brown-Kingston's remaining arguments fare no better. She cites no authority for
2 the position that disparate divorce agreements may be void for lack of consideration. To
3 the contrary, the settlement of claims contained in the separation agreement itself
4 constitutes consideration. See Long v. Long, 413 P.3d 117, 123 (Wyo. 2018) (collecting
5 cases). Here, Bailey agreed to surrender property, undertake obligations (e.g., related to
6 tax matters), and waive future claims to settled property dispositions. See generally
7 Bailey's Motion, Ex. 1. The Court thus concludes that the Agreement between Bailey
8 and Decedent was supported by sufficient consideration.
9    Nor is the Agreement unconscionable. "In general, a postmarital agreement is
10 unconscionable if it is impermissibly one-sided and is the result of unfair surprise."
11 Balogh, 332 P.3d at 642; see Kramer v. Kramer, 711 N.W.2d 164, 168 (N.D. 2006) ("[A]n
12 unconscionable agreement is an agreement no rational, undeluded person would make,
13 and no honest and fair person would accept.") (internal quotation marks omitted).
14 Brown-Kingston contends this is such a case because after the policy term expired, the
15 premiums required to keep the policy in effect would have increased exponentially,
16 making the policy more expensive than it was worth. Even if that was the case — and it
17 is not clear to the Court that Decedent would have been obligated to continue the policy
18 in effect beyond its term in any event — the fact that the Agreement may have been
19 more favorable to Bailey does not make it unconscionable. Courts frequently find
20 agreements that benefit one party to be enforceable, even when noticeable disparity
21 exists. See, e.g., Balogh, 332 P.3d at 645 (holding that even if the terms inequitably
22 favored the wife, the property division did not reach of an impermissible level of
23 unconscionability); Smith v. Doe, 268 So. 3d 457, 459 (Miss. 2018) (finding that despite
24 an agreement strongly favoring the wife, the husband understood the terms, could
25 financially afford the payments, and voluntarily entered the agreement); Mays v. Mays,
26 541 S.W.3d 516, 525 (Ky. Ct. App. 2018) (determining that "the fact that a party . . . may
27 have made a bad bargain does not render an agreement unconscionable") (emphasis in
28 ///

original).[3]  Because the Court concludes as a matter of law that the Agreement bound Decedent to maintain Bailey as the life insurance beneficiary, she is entitled to judgment.

## CONCLUSION

For the foregoing reasons, Bailey's Motion for Summary Judgment (ECF No. 43) is **GRANTED**, and Brown-Kingston's Motion for Summary Judgment (ECF No. 47) is **DENIED**.  The Clerk of Court is **DIRECTED** to distribute all remaining funds deposited with this Court related to this case to Christine Leora Bailey and to **CLOSE** this case.

IT IS SO ORDERED.

Dated:  June 9, 2021

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The fact that Decedent was not represented by counsel during the divorce proceedings does not change the outcome. "[M]erely because parties are not represented by counsel when they sign a written agreement dividing their marital property is not, by itself, sufficient justification for relief from a judgment." Kramer, 711 N.W.2d at 169 (finding that despite the lack of counsel, the agreement was enforceable when it was entered voluntarily and with thorough knowledge of its contents).